## VALENTINE, POLICE COMMISSIONER OF THE CITY OF NEW YORK, *v.* CHRESTENSEN.

No. 707.   Argued March 31, 1942.—Decided April 13, 1942.

*Mr. William C. Chanler,* with whom *Mr. Leo Brown* was on the brief, for petitioner.

*Mr. Walter W. Land* for respondent.

Briefs of *amici curiae* were filed by *Messrs. Jerome I. Myers* and *Charles S. Rhyne* on behalf of the National Institute of Municipal Law Officers, in support of petitioner; and by *Mr. Osmond K. Fraenkel* on behalf of the American Civil Liberties Union, urging affirmance.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The respondent, a citizen of Florida, owns a former United States Navy submarine which he exhibits for profit.

In 1940 he brought it to New York City and moored it at a State pier in the East River. He prepared and printed a handbill advertising the boat and soliciting visitors for a stated admission fee. On his attempting to distribute the bill in the city streets, he was advised by the petitioner, as Police Commissioner, that this activity would violate § 318 of the Sanitary Code, which forbids distribution in the streets of commercial and business advertising matter,[1] but was told that he might freely distribute handbills solely devoted to "information or a public protest."

Respondent thereupon prepared and showed to the petitioner, in proof form, a double-faced handbill. On one side was a revision of the original, altered by the removal of the statement as to admission fee but consisting only of commercial advertising. On the other side was a protest against the action of the City Dock Department in refusing the respondent wharfage facilities at a city pier for the exhibition of his submarine, but no commercial advertising. The Police Department advised that distribution of a bill containing only the protest would not violate § 318, and would not be restrained, but that distribution of the double-faced bill was prohibited. The respondent, nevertheless, proceeded with the printing of his proposed bill and started to distribute it. He was restrained by the police.

---

[1] *"Handbills, cards and circulars.*—No person shall throw, cast or distribute, or cause or permit to be thrown, cast or distributed, any handbill, circular, card, booklet, placard or other advertising matter whatsoever in or upon any street or public place, or in a front yard or court yard, or on any stoop, or in the vestibule or any hall of any building, or in a letterbox therein; provided that nothing herein contained shall be deemed to prohibit or otherwise regulate the delivery of any such matter by the United States postal service, or prohibit the distribution of sample copies of newspapers regularly sold by the copy or by annual subscription. This section is not intended to prevent the lawful distribution of anything other than commercial and business advertising matter."

54

Respondent then brought this suit to enjoin the petitioner from interfering with the distribution. In his complaint he alleged diversity of citizenship; an amount in controversy in excess of $3,000; the acts and threats of the petitioner under the purported authority of § 318; asserted a consequent violation of § 1 of the Fourteenth Amendment of the Constitution; and prayed an injunction. The District Court granted an interlocutory injunction,[2] and after trial on a stipulation from which the facts appear as above recited, granted a permanent injunction. The Circuit Court of Appeals, by a divided court, affirmed.[3]

The question is whether the application of the ordinance to the respondent's activity was, in the circumstances, an unconstitutional abridgement of the freedom of the press and of speech.

1. This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares. We are equally clear that the Constitution imposes no such restraint on government as respects purely commercial advertising. Whether, and to what extent, one may promote or pursue a gainful occupation in the streets, to what extent such activity shall be adjudged a derogation of the public right of user, are matters for legislative judgment. The question is not whether the legislative body may interfere with the harmless pursuit of a lawful business, but whether it must permit such pursuit by what it deems an undesirable invasion of, or interference with, the full and free use of the

[2] 34 F. Supp. 596.
[3] 122 F. 2d 511.

highways by the people in fulfillment of the public use to which streets are dedicated. If the respondent was attempting to use the streets of New York by distributing commercial advertising, the prohibition of the code provision was lawfully invoked against his conduct.

2. The respondent contends that, in truth, he was engaged in the dissemination of matter proper for public information, none the less so because there was inextricably attached to the medium of such dissemination commercial advertising matter. The court below appears to have taken this view, since it adverts to the the difficulty of apportioning, in a given case, the contents of the communication as between what is of public interest and what is for private profit. We need not indulge nice appraisal based upon subtle distinctions in the present instance nor assume possible cases not now presented. It is enough for the present purpose that the stipulated facts justify the conclusion that the affixing of the protest against official conduct to the advertising circular was with the intent, and for the purpose, of evading the prohibition of the ordinance. If that evasion were successful, every merchant who desires to broadcast advertising leaflets in the streets need only append a civic appeal, or a moral platitude, to achieve immunity from the law's command.

The decree is

*Reversed.*