Dear Senator Scott:
This is in response to your request for an official opinion of this office concerning the question of whether section 311.330, RSMo 1978, absolutely prohibits the sale of intoxicating liquor in any establishment with the word "saloon" in its name or advertising.
Section 311.330, RSMo 1978, referred to in your request, provides as follows:
 "Nothing in this chapter shall be so construed as to authorize the sale of intoxicating liquor in the original package, or at retail by the drink for consumption on the premises where sold, in a place commonly known as a `saloon', and no license shall be issued by any city council, board of aldermen or other authorities of any city in this state, nor by the supervisor of liquor control, for the sale of intoxicating liquor at retail by the drink for consumption on the premises where sold, in a place commonly known as a `saloon', nor in any building or room where there are blinds, screens, swinging doors, curtains or any other thing in such building or room that will obstruct or obscure the interior of such room from public view."
Intoxicating liquor is defined in section 311.020, RSMo 1978 as follows:
 "The term `intoxicating liquor' as used in this chapter, shall mean and include alcohol for beverage purposes, alcoholic, spirituous, vinous, fermented, malt, or other liquors, or combination of liquors, a part of which is spirituous, vinous, or fermented, and all preparations or mixtures for beverage purposes, containing in excess of three and two-tenths percent of alcohol by weight."
At the outset, it should be noted that the sale of liquor in Missouri is a unique business in the eyes of the law. Liquor traffic in Missouri is not a lawful business except as authorized by express legislation, and no person has a natural or inherent right to engage therein. Stateex rel Missouri Baptist Hospital v. Nangle, 230 S.W.2d 128
(Mo.Ct.App. at St.L. 1950); Milgram Food Stores, Inc. v.Ketchum, 384 S.W.2d 510, (Mo. 1964). As stated in Kehr v.Garrett, 512 S.W.2d 186 (Mo.Ct.App. at St.L. 1974):
 "We start with the proposition that the liquor business stands on a different plane than other commercial operations. It is placed under the ban of law and is differentiated from all other occupations, and no person has the natural or inherent right to engage therein. Those who engage in the business of liquor have no legal rights save those expressly granted by license and the statute. The state may impose such conditions, burdens and regulations as it may deem wise and proper. In the eyes of the law the liquor business stands on a different plane from other pursuits and is separated or removed from the natural rights, privileges and immunities of the ordinary citizen." p. 189.
The use of the word "saloon" in the name of a tavern and the advertising of this tavern would generally be recognized as commercial expressions. While it is well settled that individual expressions are protected by virtue of the First Amendment, commercial expressions have generally not enjoyed this same protection. Pittsburgh Press Co. v.Pittsburgh Comm. on Human Relations, 413 U.S. 376,93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); Borough of Collingswood v.Ringold, 66 N.J. 350, 331 A.2d 262 (1973); Valentine v.Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). Therefore, statutes may be more restrictive in regulating commercial expressions as opposed to individual expressions.
We note also that similar statutes in other jurisdictions have been upheld. In Boscia v. Warren, 359 F. Supp. 900
(E.D. Wis., 1973) plaintiff desired to use the word "saloon" in his tavern name and advertise his tavern as such. Section 66.054(9)(f) W.S.A. provided as follows:
 "No person licensed under this section shall use the word `saloon' upon any sign or advertising or as a designation of any premises in or upon which fermented malt beverages are sold or kept for sale."
In denying plaintiff relief, the court stated:
 "To succeed in his claim that section 66.054(9)(f) violates the equal protection clause, plaintiff had to satisfy one of two criteria. First he had to establish that the classification is `suspect,' which is clearly not so. The state may certainly distinguish between liquor licensees and non-licensees. Having failed to satisfy that criteria, plaintiff had to show that the class, liquor licensees, is being denied a `fundamental' right. See Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). As I have already stated, I do not think the right involved here is fundamental." p. 901.
In State ex rel Hewlett v. Womach, 355 Mo. 486,196 S.W.2d 809 (1946), the Supreme Court of Missouri was asked to interpret section 4899, RSMo 1939. The wording of the statute was identical to section 311.330 RSMo 1978. In this case, the court held that the above statute would prohibit the licensing of two types of liquor establishments. The court stated:
 "The meaning and intent of the section is apparent when the remainder of the sentence of which it is a part is read. It proceeds thus: `nor in any building or room where there are blinds, screens, swinging doors, curtains or any other thing in such building or room that will obstruct or obscure the interior of such room from public view.' Thus, in addition to prohibiting both types of sales in a place commonly known as a `saloon', it specifically denies authority to cities and to the state alike to license by-the-drink sales in a saloon, or in a place having the usual indicia thereof, as in the section enumerated, even though the place be not commonly known as a saloon." p. 814
According to this case, even though an establishment is not commonly known as a "saloon", if it contains any of the above items which obscures the view of the interior of such establishment, it may not be licensed for the sale of intoxicating liquor.
It is apparent that an establishment containing the word "saloon" in its name or advertising would be commonly known as such. Therefore, such an establishment may not obtain a liquor license and would be subject to suspension or loss of its license if previously acquired.
In support of this conclusion we note that the Division of Liquor Control has enforced this statute in this same manner since its passage. As stated in State v. PublicService Commission of Missouri, 343 S.W.2d 177 (K.C.Ct.App. 1960):
 "Our courts consistently observe the principle that the construction placed upon a statute by a governmental agency charged with its execution and enforcement is entitled to great consideration and should not be disregarded or disturbed, unless clearly erroneous — particularly when that construction has been followed and acted upon for many years." p. 182.
 CONCLUSION
Therefore, it is the opinion of this office that section311.330, RSMo 1978 prohibits the sale of liquor containing an alcoholic content of over 3.2 percent, by the drink or in the original package in any establishment with the word "saloon" in its name or with the word "saloon" in its advertising.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Cary Augustine.
Very truly yours,
 JOHN ASHCROFT Attorney General